**CALLANAN ROAD IMPROVEMENT COMPANY, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 56, Docket 32276.**

United States Court of Appeals Second Circuit.

Argued Oct. 10, 1968.

Decided Dec. 11, 1968.

John Y. Taggart, New York City (Windels, Merritt & Ingraham, New York City, on the brief), for plaintiff-appellant.

Donald A. Statland, Atty., Dept. of Justice (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Washington, D. C., Justin J. Mahoney, U. S. Atty., for the Northern District of New York, on the brief), for defendant-appellee.

Before FRIENDLY, ANDERSON and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

This case involves the interaction of various provisions of the Internal Revenue Codes of 1939 and 1954 which govern loss carryover deductions. In 1958, taxpayer Callanan Road Improvement Company sued in the United States District Court for the Northern District of New York for a refund of income taxes

paid in the years 1951 through 1954. Over time, every issue in suit was settled except one: whether taxpayer could properly apply $158,000 of a loss carryover deduction to the taxable year 1954. Chief Judge James T. Foley held that it could not and granted summary judgment for the United States. 279 F.Supp. 481 (N.D.N.Y.1968). For reasons given below, we affirm.

The relevant facts are not in dispute. In a short taxable year in 1955, taxpayer claimed a net operating loss of approximately $309,000. Under section 172 of the Internal Revenue Code of 1954 that loss could be used as a deduction against income in other years. As required, taxpayer first carried the loss back to 1953 to obtain a refund of taxes paid on its $48,000 taxable income for that year. Applying section 172, taxpayer then computed its loss carryover to 1954 by subtracting its 1953 taxable income from the 1955 loss, leaving it with $261,000 to use as a deduction from its 1954 taxable income.[1] The Government, however, did not accept these figures. It maintained that the amount of the loss carried forward from 1953 to 1954 had to be computed under the Internal Revenue Code of 1939, which would further reduce the loss carryover by $158,000—the excess of taxpayer's 1953 percentage depletion over its actual cost depletion.[2]

Underlying the controversy is a fundamental change in the treatment of loss carryovers between the 1939 and 1954 Codes. Loss carryovers are designed to enable a taxpayer with fluctuating gains and losses to achieve a rough average of income and resulting taxes by deducting losses sustained in loss years from income in gain years. Under the 1939 Code, however, the loss

carryover provisions embodied the concept of "economic income"—a principle largely discarded by the 1954 Code.[3] Economic income took into account whether a taxpayer's actual income contained nontaxable items or had been artificially reduced. For example, because a percentage depletion is not an actual economic expenditure, the excess of a percentage depletion deduction over cost or actual depletion, such as the $158,000 in this case, was considered to be economic income. To appreciate the impact of the change in philosophy between the 1939 and 1954 Codes, it is necessary to understand that use of a loss carryover may involve the determination of income (or loss) in a number of years; e. g., there must be calculation of the loss in a particular year, application of that loss to the income of another year, and then, if any loss remains, determination of how much of it can be applied in still another year. Under the economic income concept of the 1939 Code, a taxpayer's economic (or real) income was relevant at each of these steps. Thus, before a loss from one year could be applied beneficially to taxable income of another year, it first had to be set off against such nontaxable items of economic income in the second year as the $158,000 at issue here. Under the 1954 Code, however, this is not necessary. Since this case involves carryback to 1953 of a loss incurred in 1955, and then a carry forward to 1954, it highlights the change in the loss carryover rules. 1953 is a 1939 Code year; 1954 and 1955 are 1954 Code years. The question is whether on these facts the amount of loss absorbed in 1953 is governed by 1939 Code principles or by those of the 1954 Code. If the former

1. Taxpayer's 1954 taxable income was about $457,000.

2. Taxpayer's percentage depletion deduction was $164,000, its actual cost depletion was $6,000, and the excess was $158,000.

3. The reason for the change was to make available to taxpayers who sustain losses

the same tax benefits allowed those with stable incomes. See, e.g., H.R.Rep.No. 1337, 83d Cong., 2d Sess. 27 (1954), U.S. Code Cong. & Admin.News 1954, p. 4025. See also Note, Net Operating Loss Carryovers and Corporate Adjustments, 69 Yale L.J. 1201, 1203 n. 6 (1960).

apply, then no part of the $158,000 of loss in dispute remains to be used.

As so often occurs in tax cases, the question is narrow and close, and the relevant sections of the Code seem designed, like a doctor's prescription, to be read only by the initiated. The Government relies heavily on section 172(e) of the 1954 Code, quoted in full in the margin,[4] which states that in determining a loss carryover "to any taxable year, the necessary computations involving any other taxable year shall be made under the law applicable to such other taxable year." According to the Government, taxpayer's challenged loss carryover to "any taxable year" is to 1954, the "other taxable year" involved is 1953, and the "necessary computations" involving 1953 must be made under the 1939 Code,[5] the law ordinarily "applicable" to that year. And the force of section 172(e) is emphasized by the command that its general formula be followed whether the taxable years "begin before, on, or after January 1, 1954." The argument is strong, particularly since taxpayer recognizes that the principles of section 172(e) are relevant here. For example, taxpayer's 1955 loss is determined under the 1954 Code, even though it is then carried back to 1953, a 1939 Code year. In addition, taxpayer agrees that the amount of its loss carryover deduction in the year 1953 is determined by the economic income concepts of the 1939 Code. See, e. g., American Bank & Trust Co. v. United States, 333 F.2d 416 (5th Cir. 1964); Herbert J. Kent, 35 T.C. 30 (1960). However, taxpayer urges that whatever section 172(e) tells us about use of the loss in 1953, it does not instruct us on how much loss remains for application in 1954.

It is also persuasive for the Government that taxpayer in essence seeks a double deduction. Because loss carrybacks under the 1939 Code are first set off against economic but untaxed income, taxpayer would not be entitled to a deduction for 1953 (and consequent refund for taxes already paid) had the loss carryback from 1955 not exceeded taxpayer's 1953 excess of percentage over cost depletion allowance ($158,000). Thus, in 1953, taxpayer had to utilize $158,000 of the 1955 loss to get a refund for 1953 on the taxes paid on its $48,000 income for that year. If taxpayer can again apply that $158,000 of the 1955 loss to 1954, it is using the same loss twice. Finally, the Government relies upon long standing administrative regulations supporting its view,[6] which are, of course, entitled to weight. See, e. g., United States v. Correll, 389 U.S. 299, 305–306, 88 S. Ct. 445, 19 L.Ed.2d 537 (1967).

For its part, taxpayer argues that use of a loss incurred in 1955, a 1954 Code year, in another 1954 Code year (1954) should not be affected by the 1939 Code economic income concept merely because the loss first had to be carried back to 1953, a 1939 Code year. Taxpayer relies on section 172(b) (2) of the 1954 Code which provides (with explanatory material inserted) that

the entire amount of the net operating loss [$309,000] for any taxable year [1955] * * * shall be carried to

---

4. Int.Rev.Code of 1954, § 172(e):

Law Applicable to Computations.—In determining the amount of any net operating loss carryback or carryover to any taxable year, the necessary computations involving any other taxable year shall be made under the law applicable to such other taxable year. The preceding sentence shall apply with respect to all taxable years, whether they begin before, on, or after January 1, 1954.

5. The parties agree that if the 1939 Code applies, the relevant portion is section 122, which specifically provides, *inter alia*, for the treatment of the excess of percentage depletion over cost depletion. See Int.Rev.Code of 1939, § 122(d) (1).

6. See Treas.Reg. §§ 1.172-4(a) (3), (b) (1) (ii), (b) (6) (Example 1), -5(b) (1) (1956).

the earliest of the 7 taxable years [1953] to which * * * such loss may be carried. The portion of such loss which shall be carried to each of the other 6 taxable years [here only 1954] shall be the excess [$261,000], if any, of the amount of such loss [$309,000] over the sum of the *taxable income* [$48,000] for each of the prior taxable years [1953] to which such loss may be carried. [Emphasis added.][7]

There is no doubt that if section 172(b) (2) stood alone, its specific direction to look only to the "taxable income," rather than the economic income, of the prior year in which the loss was used would carry the day. But taxpayer is not in that happy position. Section 172(b) (2) does not stand isolated; it is part of a complete section which is headed "Net Operating Loss Deduction" and contains other provisions, including section 172 (e), quoted and discussed above. To this, taxpayer has a double response: Section 172(e) is ambiguous and therefore overborne by the specifics of section 172(b) (2); and, in any event, Congress did not intend section 172(e) to modify section 172(b) (2).

In support of the former argument, taxpayer cites United States v. Whitney Land Co., 324 F.2d 33 (8th Cir. 1963), which did adopt the position taxpayer urges. Indeed, the court there went further and found, id. at 37, that

the clause "the necessary computations involving any other taxable year shall be made under the law applicable to such other taxable year" means only that the net operating loss shall be determined under the law applicable to the loss year, * * *

and concluded that section 172(e) was

not intended to deal with the absorption of losses that may be carried to other years.

In all deference, we do not see the basis for the distinction in the words of the statute. The question whether $158,000 of the 1955 loss was absorbed in 1953 would seem to be one of the "necessary computations involving" that year; if so, section 172(e) is a plain direction that "the law applicable" to 1953 (the 1939 Code) applies.

Taxpayer's second argument centers around section 172(g), set out in the margin.[8] Taxpayer points out that sec-

7. The figures "7" and "6" in section 172 (b) (2), as quoted in the text, reflect the two-years-back and five-years-forward carryover provisions of section 172(b) (1) as originally enacted. More recently, section 172(b) (1) has been amended to provide that losses are carried back for more than two years, and section 172(b) (2) has been changed correspondingly.

8. Int.Rev.Code of 1954, § 172(g):
Special Transitional Rules.—
(1) Losses for Taxable Years Ending Before January 1, 1954.—For purposes of this section, the determination of the taxable years ending after December 31, 1953, to which a net operating loss for any taxable year ending before January 1, 1954, may be carried shall be made under the Internal Revenue Code of 1939.
(2) Losses for Taxable Years Ending After December 31, 1953.—For purposes of section 122 of the Internal Revenue Code of 1939—
(A) the determination of the taxable years ending before January 1, 1954, to which a net operating loss for any tax-
able year ending after December 31, 1953, may be carried shall be made under subsection (b) (1) (A) of this section; and
(B) in determining the amount of the carryback to the first taxable year preceding the first taxable year ending after December 31, 1953, the portion of the net operating loss carried to such year shall be such net operating loss reduced by—
(i) the net income for the second preceding taxable year computed as if the second sentence of section 122(b) (2) (B) of the Internal Revenue Code of 1939 applied, or
(ii) if smaller, the portion of the net operating loss which by reason of subsection (f) of this section is carried to the second preceding taxable year.
(3) Taxable Years Beginning After December 31, 1953, and Ending Before August 17, 1954.—In the case of a taxable year which begins after December 31, 1953, and ends before August 17, 1954—
(A) the net operating loss deduction for such year shall be computed as if

tion 172(g) (2) (B) governs the amount of loss carryover to 1953 when a loss has first been carried back from 1954, at least in part, to 1952, and that the amount absorbed in 1952 is determined by reference to the 1939 Code. Taxpayer contends that section 172(g) (2) (B) would be unnecessary if section 172(e) had the broad effect the Government attributes to it. However, even assuming that the Government's reading of section 172(e) would make section 172(g) (2) (B) unnecessary, we do not agree that specific treatment of 1954 loss carrybacks to 1952 evidences an intention that 1955 loss carrybacks to 1953 should be handled differently. It seems more likely that section

172(g) (2) (B) does not declare a policy differing from section 172(e) but simply deals with the case that occurred to the draftsman, leaving the courts to deal with other problems by applying the general principles underlying section 172. Certainly, this was the view adopted in a slightly different situation in American Bank & Trust Co. v. United States, supra, where the question was which Code principles governed use in a 1939 Code year of a loss carried back from a 1954 Code year. The Fifth Circuit found guidance both from section 172(g), quoted above,[9] and from section 172(f), set out in the margin,[10] which states the rules govern-

subsection (a) of this section applied to such taxable year, and

(B) for purposes of the second sentence of subsection (b) (2), the taxable income for such taxable year shall be the net income for such taxable year, computed—

(i) without regard to paragraphs (1) and (2) of section 122(d) of the Internal Revenue Code of 1939, and

(ii) by allowing as a deduction an amount equal to the sum of the credits provided in subsections (b) and (h) of section 26 of such Code.

\* \* \* \* \*

9. See note 8 supra.

10. Int.Rev.Code of 1954, § 172(f):

Taxable Years Beginning in 1953 and Ending in 1954.—In the case of a taxable year beginning in 1953 and ending in 1954—

(1) In lieu of the amount specified in subsection (c) [definition of "net operating loss"], the net operating loss for such year shall be the sum of—

(A) that portion of the net operating loss for such year computed without regard to this subsection which the number of days in the loss year after December 31, 1953, bears to the total number of days in such year, and

(B) that portion of the net operating loss for such year computed under section 122 of the Internal Revenue Code of 1939 as if this section had not been enacted, which the number of days in the loss year before January 1, 1954, bears to the total number of days in such year.

(2) The amount of any net operating loss for such year which shall be

carried to the second preceding taxable year is the amount which bears the same ratio to such net operating loss as the number of days in the loss year after December 31, 1953, bears to the total number of days in such year. In determining the amount carried to any other taxable year, the reduction for the second taxable year preceding the loss year shall not exceed the portion of the net operating loss which is carried to the second preceding taxable year.

(3) The net operating loss deduction for such year shall be, in lieu of the amount specified in section 122(c) of the Internal Revenue Code of 1939, the sum of—

(A) that portion of the net operating loss deduction for such year, computed as if subsection (a) [definition of "net operating loss deduction"] of this section were applicable to the taxable year which the number of days in such year after December 31, 1953, bears to the total number of days in such year, and

(B) that portion of the net operating loss deduction for such year, computed under section 122(c) of the Internal Revenue Code of 1939 as if this paragraph had not been enacted, which the number of days in such year before January 1, 1954, bears to the total number of days in such year.

(4) For purposes of the second sentence of subsection (b) (2), the taxable income for such year shall be the sum of—

(A) that portion of the net income for such year, computed without regard to this paragraph, which the number of days in such year before January 1, 1954, bears to the total number of days in such year, and

ing losses and loss carryovers for taxable years overlapping the cut-off point of January 1, 1954. As to the latter, the court pointed out, 333 F.2d at 419, that

> the portion of the taxable year which transpired in 1953 is to be controlled by the 1939 Code while that which is in 1954 is governed by the 1954 Code. The inference is strong that all years prior to 1954 should remain under the 1939 rules. Otherwise Section 172(f) would allow for only an island of time to be governed by the 1939 Code without any apparent rationale for this eccentricity.

The inference to be drawn from section 172(f) in the present case is equally strong. Originally Congress did not provide an absorption rule for losses carried to a taxable year overlapping January 1, 1954. Consequently, applying the general directive of section 7851(a) (1) (A) of the 1954 Code that the new Code be applied only to taxable years beginning after December 31, 1953, and ending after August 17, 1954, the date of enactment of the 1954 Code, the Commissioner required that absorption in such overlap years be completely governed by the economic income principles of the 1939 Code.[11] In 1958, however, Congress amended section 172(f) retroactively to provide a new loss absorption rule for overlap years: A loss carried to such a year would be absorbed by that part of the year's economic income in proportion to the 1953 days in the taxable year plus that part of the year's taxable income in proportion to the 1954 days. Thus, section 172 of the 1954 Code now specifically provides that economic income concepts govern absorption of losses carried back from 1954 Code years to 1952 and, insofar as the year falls in 1953, to 1953–1954 overlap years. Treatment of the full year 1953 in inconsistent fashion by applying the 1954 Code absorption principles would be an eccentric legislative scheme.

We have also looked for clues to congressional intent in the legislative history. Since both parties have cited it to us, it is not surprising to find it inconclusive, although in the main, legislative comments in 1954 seem more helpful than not to the Government.[12]

 In sum, although we have not achieved complete assurance—certainty is a state of mind we infrequently attain in tax cases—we feel reasonably confident that the Government's position is correct. The broad language of sec-

---

> (B) that portion of the net income for such year, computed—
> (i) without regard to paragraphs (1) and (2) of section 122(d) of the Internal Revenue Code of 1939, and
> (ii) by allowing as a deduction an amount equal to the sum of the credits provided in subsections (b) and (h) of section 26 of such Code,
> which the number of days in such year after December 31, 1953, bears to the total number of days in such year.

11. The Commissioner took the same position with regard to short taxable years beginning after December 31, 1953, and ending before August 17, 1954. This loss absorption rule was also changed by Congress in 1958. See Int.Rev.Code of 1954, § 172(g) (3), quoted in note 8 supra.

12. See, e.g., H.R.Rep.No. 1337, 83d Cong., 2d Sess. A57 (1954):
> In view of the changes made, it was necessary to provide rules as to how net operating losses sustained in 1954 and subsequent years, and the resulting carrybacks, should be computed when carried back to pre-1954 years, and how pre-1954 losses, and the resulting carryovers, should be computed when carried over to 1954 and succeeding years. The rules provided in subsection (e) thus indicate that the amount of a 1953 loss shall be computed under the 1939 Code, but adjustments to such loss in 1954 and succeeding years to which the loss which has been so computed is carried shall be made under the 1954 Code. Likewise, the amount of any 1954 loss will be computed under the 1954 Code, but *any adjustments to such loss when carried back to 1952 or 1953 will be made under the provisions of the 1939 Code.* (Emphasis added.) U.S.Code Cong. & Admin.News 1954, p. 4194.

13. The question in *Pacific Rock* was which Code's provisions governed absorption in 1953 of a loss carried forward from 1952.

tion 172(e) easily bears the meaning put on it by the Government that loss absorption in 1953 is governed by 1939 Code principles. Such a reading is consistent with long standing regulations, makes for a sensible and consistent statutory scheme, and avoids double use of the $158,000 loss at issue here, which we doubt that Congress intended to allow. See Pacific Rock & Gravel Co. v. United States, 297 F.2d 122, 125 (9th Cir. 1961). As in that case, taxpayer really seems to be saying that "because the change [in the 1954 Code] was desirable, it should be made retroactive." Id. The argument did not prevail there [13] nor should it here, for the reasons set forth above. Accordingly, we interpret section 172(e) to require application of the economic income concept of the 1939 Code to determine how much of taxpayer's 1955 loss carryback to 1953 is absorbed in that year and how much remains to be used in 1954. Summary judgment in favor of the Government was therefore proper.

The judgment appealed from is affirmed.

Duffy, Senior Circuit Judge, dissented.